FILED
IN CLERKS OFFICE

2019 OCT ? PM 2: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## CIVIL ACTION NO.19-10599-RGS

## FRANCIS OBIORA ENWONWU

V.

## DEPARMENT OF HOMELAND SECURITY

ICE CONTRACTED (*Yolanda Marfissi, Jenifer Hood, Rober McNiece, William Chambers, Larry Domes*) CONDITIONS WITH

BRISTOL COUNTY SHERIFF'S OFFICE **(Sheriff Thomas Hodgson, *Maureen Atkins, Lieutenant Barry Ferreira, Officer Ashwood,Officer Jordan, Officer Sousa, Officer Saurette, officer Gosson, Disciplinary Officer Todd Barreira, Lieutenant Duarte, Major Bulger, Officer Linclon, Officer Varela, Colonel James Lancaster)***

SUFFOLK COUNTY SHERIFF OFFICER[S] *(Sean Pugisley, Lieutenant Ross, Dana Johnson, Lieutenant Lopez)*

PLYMOUTH COUNTY SHERIFF OFFICER[S] **Sheriff Joseph Mc Donald**, *ADS Gavoni)*

Enwonwu, a pro se Litigant is expected to follow/ abide by the rules that govern the practice[s] in this Federal District Court of Massachusetts,

In the civil context, "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014).

However, Enwonwu inartfully plead to be held to "less stringent standards" than formal pleadings drafted by lawyers, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

Pro Se Litigant has provided evidence of such injury to himself and, such blockage and dismissal of this Law File[s] to be accessed by Enwonwu to file a Basic Federal Civil Pleadings before (Judge Richard G. Stearns) while housed at Bristol County Jail [is], in itself, unconstitutional and, " the constitutionally-protected right of access to the courts is narrow in scope, the right of access to the courts do extend to enable Enwomwu to litigate with maximum ineffectiveness once in court."

The courts have frequently stated that prison administration was a function relegated to the executive branch of government, herein, Enwonwu have been given "No access to [Rule 8 and 10] Federal Rule of Civil Procedure that should be accessed in any Law Library and, for this reason the judiciary would interfere only where the wrongs committed by this institution [with it's officials] were of monumental proportions. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO.19-10599-RGS

## FRANCIS OBIORA ENWONWU

v.

## DEPARMENT OF HOMELAND SECURITY
ICE CONTRACTED (*Yolanda Marfissi, Jenifer Hood, Larry Domes* ) CONDITIONS
WITH
*BRISTOL COUNTY SHERIFF'S OFFICE(sheriff Thomas Hodogson,Maureen Atkins,Lieutenant Barr Ferreira, officer Ashwood, officer Jordan, officer Sousa, officer Saurette, officer Gosson, officer Todd Barreria, Lieutenant dUARTE, Major Bulger,office Linoclon, officer Varela, Colonel James Lancaster)*

## AMENDED COMPLAINT

## GROUND 1: *CAUSE 42:1983, Prisoner's Civil Rights §1983 claim.*

(1)- On March 8, 2017. Enwonwu was poraled to ICE from MCI Concord state prison with an ongoing diagnosed <u>spigelian hernia.</u>

(2)- On March 9, 2017. Due to the severity of Enwonwu's medical condition he signed a medical records release form, with Bristol County ICE detention medical director Maureen Atkins  to continue medical treatment.

**Untreated diagnosed spigelian hernia;**

[a] Enwonwu was parole from State prison to the DHS/ICE custody and was held at Bristol County jail with diagnosed spigelian hernia thas has not been treated while detained in the care of CPS Health Care Services, " to inflict wrong injury upon *Enwonwu and an overt act that results in damages,*

## Rejection to Dental treatment;

- [b] Moreover, CPS Health Care Services mischaracterization of what Enwonwu's worst untreated dental condition was, led to Blood Build-Ups through his rooted dead teeth Gum, since (that rejection to Dental treatment) turns into pus.

- [c] Upon inquiry of the dentist Enwonwu was notified that in order to be provided with partial denture he had to lost eight teeth all together to be qualified, this glaring misconduct and negligence has breached the DHS Speacial Duty of Care through its contracted custody agreement between Bristol County Sherriff - CPS Health Care Services, IN TREATING ICE DETAINEES.

*"it is undisputed that all of the named officer(s) or medical health official(s)were in the same vicinity at some point, all working for the DHS/ICE when Enwonwu was refused medical treatment for his untreated conditions, he argues that mere presence creates "a sufficient issue of material fact to grant summary judgment, in context, here where indicated objective corroboration for the plaintiff's testimony that "all of them" were involved, Smith, 293 F.3d at 650.*

**Ingraham Wright, 430 U.S., at 672–673; see South v. Maryland, 396 (1856),"that one such protec-tion was the right to recover against a sheriff for breach of his ministerial duty to provide for the safety of prisoners in his custody. at 402–403. and that, Due Process demands that the DHS protect Enwonwu whom it incarcerates by exercising reasonable care to assure his medical safety and, by compensating him for negli-gently inicted injury".**

**For compensatory damages, Plaintiff's injury - emotional distress, physical pain through medical symptoms based on lack of medical treatment he believes is prohibited by <u>Duty of care</u> will yield at most a nominal award to recover compensatory damages for emotional distress, claimant have shown "serious emotional injury that is accompanied by physical symptomatology") and, Enwonwu moves the court in his observation to that elements of his claim of conspiracy to violate federal civil rights are that, a state and federal law tort claim for DHS failure to properly train, supervise and control officers (against the sheriff(s) departments); a conspiracy to violate federal civil rights (against the Individual Defendants); a conspiracy to violate state civil rights (against the Individual Defendants).**

*Unlike in a criminal indictment, where charging multiple conspiracies in the same count is forbidden by the doctrine of duplicity, U.S. v. Morrow, 717 F.2d 800, 804 (3d Cir. 1983), multiple conspiracies may be charged in a single count of a civil complaint. See, e.g., Hampton v. Hanrahan, 600 F.2d 600, 621, 627 n.27 (7th Cir. 1979), rev'd in part on other grounds by Hanrahan v. Hampton, 446 U.S. 754, 100 S. Ct. 1987, 64 L. Ed. 2d 670 (1980).*

- *(1)" two or more persons conspire to deprive him of his[constitutional rights];*

- *(2) one or more of the conspirators performs by negligently inicted injury an overt act in furtherance of the conspiracy and;*

- *(3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States; " with the added gloss under § 1983 that "the conspirators act 'under the color of state (and federal) law.'" Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 162 (3d Cir. 2001) (quoting 42 U.S.C. § 1983).*

**Under the elements of a claim of conspiracy to violate civil rights are essentially the same. See Banco Popular N.A. v. Gandi 184 N.J. 161, 177-78, 876 A.2d 253 (2005) ("In New Jersey . . . the principal element of [civil conspiracy] is an agreement between parties to inflict wrong injury [against or] upon another, and an overt act that results in damage.") (citations omitted) nor, viewed with the appropriate degree of skepticism, Enwonwu's claim for punitive damages viable under Massachusetts state and, Federal laws. *See Messier v. Ace Am. Ins. Co., C.A. No. 12- 892-JD, 2013 U.S. Dist. LEXIS 138475, 2013 WL 5423716, at \*3 (D.R.I. Sept. 26, 2013)* ("Where the punitive . . . damages claim makes up the bulk of the asserted amount in controversy, a heightened degree of scrutiny and healthy skepticism is appropriate.") consistently holding that the claimant have proved "willful, wanton, or malicious conduct of medical negligence by Department Of Homeland Security Ice Contracted Conditions is of direct cause to Enwonwu's suffering, the plainiff before this court should be "compensated for this negligently inicted injury."**

An equally ability to invoke alienage jurisdiction, is that the pleading must establish at least $9,999,000 in controversy arising from the federal law tort claim, which he have done. Plaintiff's damage allegations ($9,999,000 in compensatory damages and $9,999,000 in punitive damages) are both based on § 1983. all of these damage claims is plausible under Federal tort law.

*Respectfully submitted*

ENWONWU,FRANCIS
PRO SE LITIGANT

*26TH,SEPTEMBER 2019*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO.19-10599-RGS

FRANCIS OBIORA ENWONWU

V.

## DEPARMENT OF HOMELAND SECURITY
ICE CONTRACTED (*Yolanda Marfissi, Jenifer Hood, Larry Domes* ) CONDITIONS
WITH
*BRISTOL COUNTY SHERIFF'S OFFICE(sheriff Thomas Hodogson,Maureen
Atkins,Lieutenant Barr Ferreira, officer Ashwood, officer Jordan, officer Sousa,
officer Saurette, officer Gosson, officer Todd Barreria, Lieutenant dUARTE, Major
Bulger,office Linoclon, officer Varela, Colonel James Lancaster)*

## AMENDED COMPLAINT

## GROUND 1: *Enwonwu's 6 and 14 Amendments is violated on the doctrine standing, which is a constitutional requirement for this federal court to exercise jurisdiction and decide civil action suit filed before it.*

(1)- On or about April 20, 2017. I began filing Appeal (pro-se) with the **Board of Immigration Appeals** from Bristol County ICE detention center, but due to the lack of P.D.F file reader software,

### Lack of access to law books and shortcomings of Library or Legal Assistance Program.

- [a] However, Enwonwu was prejudiced as a result of, that, lack of access to law books, and thus state a claim for denial of access to the courts. Most specifically, He lost non-frivolous arguable claims with the BIA .

**see Lewis v. Casey, 518 U.S. 343, 355, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). "In order to state a claim for denial of meaningful access to the courts, . . . plaintiffs must plead and prove prejudice stemming from the asserted violation," such as "the late filing of a court document or the dismissal of an otherwise meritorious claim." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) (citing Lewis, 518 U.S. at 351-52).**

**Due to the defendant's misconduct and, directives at issue here preclude Enwonwu from pursuing his claim Pro Se, this right should not be unfettered, the courts have frequently stated that prison administration was a function relegated to the executive branch of government, and for this reason the judiciary would interfere only where the wrongs committed by institution officials were of monumental proportions. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); to assert a claim for denial of access to the courts, a prisoner must allege that the failure to provide the legal resources required in Bounds resulted in actual injury... See Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Logue v. Chatham County Detention Ctr., 152 Fed. Appx. 781, 784 (11th Cir. 2005) (per curiam) ("To have standing to seek relief under § 1983 Enwonwu has shown actual injury by showing that the denial actually impeded a non-frivolous claim).**

(2)- Herein where persistently the "actual injury" demonstrated the shortcomings of the Bristol County Sheriff's Library or Legal Assistance Program which had hindered Enwonwu's filed present case[s] before this United States District Court, District of Massachusetts, due to all Library shortcomings that resulted in him being unable to pursue a non-frivolous legal claim as a pro se litigant.

[a] In spite, the rule of law established in Hull, "county or state officer(s) may not abridge or impair pro se litigant that right to apply to a federal court case(s) as herein.

**See Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980); (observing that "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases");Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977) (describing access to the courts as a "fundamental constitutional right"). the right of access to the courts is sourced from both "the First and Fourteenth Amendments;"**

Monroe, 536 F.3d at 205, and is typically framed as a due process right in the inmate context, see id. at 209, but in other contexts as "an aspect of the First Amendment right to petition the Government for redress of grievances," Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); but see Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (describing the right to "meaningful access" to the courts as an "equal protection guarantee").

An equally ability to invoke alienage jurisdiction, is that the pleading must establish at least $9,999,000 in controversy arising from the federal law tort claim, which he have done. Plaintiff's damage allegations ($9,999,000 in compensatory damages and $9,999,000 in punitive damages) are both based on § 1983. all of these damage claims is plausible under Federal tort law, plaintiff has provided sufficient facts to clear this hurdle.

Accordingly, the amended complaint does plausibly allege a state and federal law tort claim with damages that could fulfill the federal court's amount-in-controversy requirement, therefore, even if supported by plausible facts (which the amended complaint does include), the claims of negligent and intentional misrepresentation asserted against DHS and Bristol county sheriff's office in their individual capacities can be sustained based on the Court's alienage jurisdiction, based on that perspective of the Constitution and the amended complaint met the state and federal law claim, from the perspective of Plaintiff's newly-asserted lawsuit action, it is clear that the Court have diversity-based subject matter jurisdiction over claims of negligence or intentional caused him to legal misrepresentation;

**Preliminary injunction is "extraordinary and, takes its drastic remedy herein as the movant, by a clear showing, carries his burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (as in original) (quoting 11A C. Wright, A. Miller, & M.Kane, Federal Practice and Procedure § 2948 (2d ed. 1995).**

**The *sine qua non* of this four-part inquiry is likelihood of success on the merits: the moving party can demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). the court should issue a preliminary injunction "on the basis of evidence before it alone,"and should not be wary of issuing an injunction as plaintiff Enwonwu have provided the court with a meritous claim with all recorded evidence to be called upon, not solely based on allegations and, conclusory effect", see underlying meritorious claims filed as;**

**Enwonwu's complaint made with the DHS Office Of Inspector General No.19-04-ICE-0144, No.18-08-ICE-0333, and complaints made with the ICE Detainee Call Center/ DRIL Number [s].730-110518-353945, 741-062119-378386, 743-010819-360935, 749-061919-378222.**

**see Atari Games Corp. v. Nintendo of Am., Inc., 897 F.2d 1572 (Fed. Cir. 1990); see also McMillian v. Konecny, C.A. No. 15-00241, 2017 U.S. Dist. LEXIS 144163, 2017 WL 3891692, at *2 (N.D.N.Y. Sept. 6, 2017) (denying prisoner's motion for a preliminary injunction because he had failed "to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims"); Snyder v. Am. Kennel Club, 575 F. Supp. 2d 1236, 1240 (D. Kan. 2008) ("A party seeking a preliminary injunction must make its case not by mere allegations, but by clear proof.")**

*Unlike in a criminal indictment, where charging multiple conspiracies in the same count is forbidden by the doctrine of duplicity, U.S. v. Morrow, 717 F.2d 800, 804 (3d Cir. 1983), multiple conspiracies may be charged in a single count of a civil complaint. See, e.g., Hampton v. Hanrahan, 600 F.2d 600, 621, 627 n.27 (7th Cir. 1979), rev'd in part on other grounds by Hanrahan v. Hampton, 446 U.S. 754, 100 S. Ct. 1987, 64 L. Ed. 2d 670 (1980).*

- *(1)" two or more persons conspire to deprive him of his[constitutional rights];*

- *(2) one or more of the conspirators performs by negligently inicted injury an overt act in furtherance of the conspiracy and;*

- *(3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States; " with the added gloss under § 1983 that "the conspirators act 'under the color of state (and federal) law.'" Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 162 (3d Cir. 2001) (quoting 42 U.S.C. § 1983).*

**Under the elements of a claim of conspiracy to violate civil rights are essentially the same. See Banco Popular N.A. v. Gandi 184 N.J. 161, 177-78, 876 A.2d 253 (2005) ("In New Jersey . . . the principal element of [civil conspiracy] is an agreement between parties to inflict wrong injury [against or] upon another, and an overt act that results in damage.") (citations omitted) nor, viewed with the appropriate degree of skepticism, Enwonwu's claim for punitive damages viable under Massachusetts state and, Federal laws.** *See Messier v. Ace Am. Ins. Co., C.A. No. 12- 892-JD, 2013 U.S. Dist. LEXIS 138475, 2013 WL 5423716, at *3 (D.R.I. Sept. 26, 2013)* **("Where the punitive . . . damages claim makes up the bulk of the asserted amount in controversy, a heightened degree of scrutiny and healthy skepticism is appropriate.") consistently holding that the claimant have proved "willful, wanton, or malicious conduct of medical negligence by Department Of Homeland Security Ice Contracted Conditions is of direct cause to Enwonwu's suffering, the plainiff before this court should be "compensated for this negligently inicted injury."**

An equally ability to invoke alienage jurisdiction, is that the pleading must establish at least $9,999,000 in controversy arising from the federal law tort claim, which he have done. Plaintiff's damage allegations ($9,999,000 in compensatory damages and $9,999,000 in punitive damages) are both based on § 1983. all of these damage claims is plausible under Federal tort law.

*Respectfully submitted*

*ENWONWU,FRANCIS*
*PRO SE LITIGANT*
*26TH,SEPTEMBER 2019.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO.19-10599-RGS

FRANCIS OBIORA ENWONWU

v.

DEPARMENT OF HOMELAND SECURITY
ICE CONTRACTED (*Yolanda Marfissi, Jenifer Hood, Rober McNiece,*)
CONDITIONS WITH
PLYMOUTH COUNTY SHERIFF OFFICER[S] (**Plymouth County Sheriff
Joseph Mc Donald,** *ADS Gavoni)*

# **AMENDED COMPLAINT**

## *GROUND 1*: *Usurpation of ICE or DHS Federal Authority.*

(1)- Assigned ICE agent Jenifer Hood has tried on numerous occasions to obtain Enwonwu's traveling documents to no avail;

- [a] The public has a strong interest in the vindication of an individual's (Enwonwu) constitutional rights. In such circumstances, the interest of preserving the Supremacy Clause is paramount.

- [b] Under traditional due process and equal protection analysis, state action can no[t] sustain a rational relation to a legitimate "CAT" Federal Governmental Interest;

(2)- Relevant facts shown that onsite ICE agent Robert Mcniece, did call Enwonwu out of his cell several different time into this small space office while held at plymouth county jail [unit-C3] to call the Nigerian Counsulate General in attempt to obtain travel documents but to No avail.

- [a] The executive branch's authority over matters of foreign affairs is an implied constitutional power. The exercise of the federal executive authority means that *state* or law in massachusetts must give way where there is evidence of clear conflict between the policies adopted by the two.

(3)- The Plymouth County Sheriff ADS **Gavoni,** did exceeded that scope of his authority, by personally calling the Nigerian Counsulate Office, and personally reqesting travel documents for enwonwu's removal from the USA without consent from or by Enwonwu to do so, on his behalf, when the Nigerian counsulate General perceived *Gavoni's* made "telephone call, to be of an, Ice agent calling their NewYork office"....

- [a] In fact, Gavoni Usurped ICE Authority and his action "instantly became relevant as why Gavoni contated the office of the Nigerian consulate on Enwonwu's behalf regarding his travel documents without his presence nor Enwonwu's personal consent to do so"

**Even if the constitutional conception of equal protection of the laws means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest, When such deprivation of a constitutional right involved, is one most courts must hold that further showing of irreparable injury have been done, necessary. Moreover... herein, Enwonwu's filed civil action before this court showing irreparable harm is probably the most common method of demonstrating that there was no adequate legal remedy;**

**Substantial evidence supports a decision if "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" backs it up. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Thus, a decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence. Wright-Hines, 597 F.3d at 395...**

In cases in which Congress has not explicitly provided for preemption in a given statute, state law must still yield in two circumstances. First, when Congress intends federal law to occupy the field, state law in that area is preempted. Even if Congress has not occupied the field, state law is preempted as well where it conflicts with federal law. Conflicts arise when compliance with both federal and state regulations is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. To determine whether obstacle preemption exists, a court must employ its judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.

(4)- Even though that under the 287(g) program agreement erodes trust between Plymouth County Sherrif, since said law allow it's correctional officers to be trained on performing some tasks, *Gavoni* unreasonably exceeded the authority delegated under the 287(g) program with the Federal Immigration and Custom enforcement, also known as ICE; citing *Arkansas Louisiana Gas Co v. Hall*, 453 US 571 (1981) at 572 "*Permitting the state court to award what amounts to a retroactive right to collect a rate in excess of the filed rate "only accentuates the danger of conflict," and no appeal to equitable principles can justify such usurpation of federal authority"*.

- *See Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980) (observing that "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases"); Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977) (describing access to the courts as a "fundamental constitutional right").*

**The right of access to the courts is sourced from both "the First and Fourteenth Amendments," Monroe, 536 F.3d at 205, and is typically framed as a due process right in the inmate context, see id. at 209, but in other contexts as "an aspect of the First Amendment right to petition the Government for redress of grievances," Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); but see Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (describing the right to "meaningful access" to the courts as an "equal protection guarantee").**

(5)- The court must be aware, of such exceeded interpretation of the scope to Gavoni's conduct, receives the same deference accorded to his personal action, which should be viewed in light of his collective bargaining agreement as a ICE Agent;

- [a] Due to the urgency of Enwonwu's pending Federal Court order, pushing ICE provide documental proof of removal in a foreseeable future, which was a comprehensive definition to the petition 1:17-cv-12555-IT under 2241 habeas corpus; as a result of *ADS Gavoni's* calling the Nigerian consulate, a 30 day emergency travel document "issuance ocurred on May 15, 2018". to which the Goverment used such ploy to circumvent the Federal habeas jurisdictional hold, that prohibited Enwonwu's removal from Massachusetts.

- [b] In fact, ICE knew that the removal flight was scheduled for June 19, 2018. for final departure, However, the emergency travel document obtained were set to expire June 15, 2018. which is 4-days prior to departure flight was set to leave from *EL Paso, Texas* Air Force Base.

An equally ability to invoke alienage jurisdiction, is that the pleading must establish at least $9,999,000 in controversy arising from the federal law tort claim, which he have done. Plaintiff's damage allegations ($9,999,000 in compensatory damages and $9,999,000 in punitive damages) are both based on § 1983. all of these damage claims is plausible under Federal tort law, plaintiff has provided sufficient facts to clear this hurdle.

*Respectfully submitted*

*ENWONWU,FRANCIS*
*PRO SE LITIGANT*
*26TH,SEPTEMBER 2019.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO.19-10599-RGS

FRANCIS OBIORA ENWONWU

V.

DEPARMENT OF HOMELAND SECURITY
ICE CONTRACTED (*Yolanda Marfissi, Jenifer Hood, Rober McNiece,* )
CONDITIONS WITH
PLYMOUTH COUNTY SHERIFF OFFICER[S] (**Plymouth County Sheriff
Joseph Mc Donald,** *ADS Gavoni)*

## AMENDED COMPLAINT

## *GROUND 1*: *Usurpation of ICE or DHS Federal Authority.*

(1)- Assigned ICE agent Jenifer Hood has tried on numerous occasions to obtain Enwonwu's traveling documents to no avail;

- [a] The public has a strong interest in the vindication of an individual's (Enwonwu) constitutional rights. In such circumstances, the interest of preserving the Supremacy Clause is paramount.

- [b] Under traditional due process and equal protection analysis, state action can no[t] sustain a rational relation to a legitimate "CAT" Federal Governmental Interest;

(2)- Relevant facts shown that onsite ICE agent Robert Mcniece, did call Enwonwu out of his cell several different time into this small space office while held at plymouth county jail [unit-C3] to call the Nigerian Counsulate General in attempt to obtain travel documents but to No avail.

- [a] The executive branch's authority over matters of foreign affairs is an implied constitutional power. The exercise of the federal executive authority means that *state* or law in massachusetts must give way where there is evidence of clear conflict between the policies adopted by the two.

(3)- The Plymouth County Sheriff ADS *Gavoni,* did exceeded that scope of his authority, by personally calling the Nigerian Counsulate Office, and personally reqesting travel documents for enwonwu's removal from the USA without consent from or by Enwonwu to do so, on his behalf, when the Nigerian counsulate General perceived *Gavoni*'s made "telephone call, to be of an, Ice agent calling their NewYork office"....

- [a] In fact, Gavoni Usurped ICE Authority and his action "instantly became relevant as why Gavoni contated the office of the Nigerian consulate on Enwonwu's behalf regarding his travel documents without his presence nor Enwonwu's personal consent to do so"

**Even if the constitutional conception of equal protection of the laws means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest, When such deprivation of a constitutional right involved, is one most courts must hold that further showing of irreparable injury have been done, necessary. Moreover... herein, Enwonwu's filed civil action before this court showing irreparable harm is probably the most common method of demonstrating that there was no adequate legal remedy;**

**Substantial evidence supports a decision if "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" backs it up. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Thus, a decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence. Wright-Hines, 597 F.3d at 395...**

**In cases in which Congress has not explicitly provided for preemption in a given statute, state law must still yield in two circumstances. First, when Congress intends federal law to occupy the field, state law in that area is preempted. Even if Congress has not occupied the field, state law is preempted as well where it conflicts with federal law. Conflicts arise when compliance with both federal and state regulations is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. To determine whether obstacle preemption exists, a court must employ its judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.**

(4)- Even though that under the 287(g) program agreement erodes trust between Plymouth County Sherrif, since said law allow it's correctional officers to be trained on performing some tasks, *Gavoni* unreasonably exceeded the authority delegated under the 287(g) program with the Federal Immigration and Custom enforcement, also known as ICE; citing *Arkansas Louisiana Gas Co v. Hall*, 453 US 571 (1981) at 572 "*Permitting the state court to award what amounts to a retroactive right to collect a rate in excess of the filed rate "only accentuates the danger of conflict," and no appeal to equitable principles can justify such usurpation of federal authority".*

- **See Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980) (observing that "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases"); Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977) (describing access to the courts as a "fundamental constitutional right").**

**The right of access to the courts is sourced from both "the First and Fourteenth Amendments," Monroe, 536 F.3d at 205, and is typically framed as a due process right in the inmate context, see id. at 209, but in other contexts as "an aspect of the First Amendment right to petition the Government for redress of grievances," Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); but see Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (describing the right to "meaningful access" to the courts as an "equal protection guarantee").**

(5)- The court must be aware, of such exceeded interpretation of the scope to Gavoni's conduct, receives the same deference accorded to his personal action, which should be viewed in light of his collective bargaining agreement as a ICE Agent;

- [a] Due to the urgency of Enwonwu's pending Federal Court order, pushing ICE provide documental proof of removal in a foreseeable future, which was a comprehensive definition to the petition 1:17-cv-12555-IT under 2241 habeas corpus; as a result of *ADS Gavoni's* calling the Nigerian consulate, a 30 day emergency travel document "issuance ocurred on May 15, 2018". to which the Goverment used such ploy to circumvent the Federal habeas jurisdictional hold, that prohibited Enwonwu's removal from Massachusetts.

- [b] In fact, ICE knew that the removal flight was scheduled for June 19, 2018. for final departure, However, the emergency travel document obtained were set to expire June 15, 2018. which is 4-days prior to departure flight was set to leave from *EL Paso, Texas* Air Force Base.

An equally ability to invoke alienage jurisdiction, is that the pleading must establish at least $9,999,000 in controversy arising from the federal law tort claim, which he have done. Plaintiff's damage allegations ($9,999,000 in compensatory damages and $9,999,000 in punitive damages) are both based on § 1983. all of these damage claims is plausible under Federal tort law, plaintiff has provided sufficient facts to clear this hurdle.

*Respectfully submitted*

ENWONWU,FRANCIS
PRO SE LITIGANT

*26TH,SEPTEMBER 2019*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO.19-10599-RGS

FRANCIS OBIORA ENWONWU

v.

## DEPARMENT OF HOMELAND SECURITY
ICE CONTRACTED (*Yolanda Marfissi, Jenifer Hood, Larry Domes* ) CONDITIONS
WITH
*BRISTOL COUNTY SHERIFF'S OFFICE(sheriff Thomas Hodogson,Maureen
Atkins,Lieutenant Barr Ferreira, officer Ashwood, officer Jordan, officer Sousa,
officer Saurette, officer Gosson, officer Todd Barreria, Lieutenant dUARTE, Major
Bulger,office Linoclon, officer Varela, Colonel James Lancaster)*

## **AMENDED COMPLAINT**

## GROUND 1: *Destroyed legal documents in (flash drive) and, the content of said flash drive indicated all Enwonwu's filed reports to the DHS office of Civil Rights and Civil Liberties about the living conditions being inhumane,*

(1)- On or about December 12, 2018, Enwonwu verbally reiterated to the OIG, of the abuses he faced, as to the lack of PDF reader software for Lexis Nexis legal research.

- [a] He also wrote the same [O.I.G] office on December 16, 2018. by hand cc [ing] Maura Healy the Massachusetts United States Attorney General's Office a copy, which solely appraised Enwonwu filed report[s] of continued institutional abuse at the hands of Bristol county Sheriffs while housed in the unit 2east location of this Jail's living conditions was and still is one of the most serious highened degree of violation to the united states set federal law ICE detainees housing agreement, not to be housed physically with any county or state inmate[s] in the immediate unit space.

- [b] on December 27th, 2018, 8 days later, Bristol county sheriff official[s] retaliated against Enwonwu because of the outstanding Civil Rights Action and was always manipulated every time he decries his degrading mental health due to the medical indifferen in violation of the *287(g)* program agreement between Federal Immigration and Custom enforcement.

(2)- Herein, that "[d]eliberate indifference to Enwonwu's serious medical needs presents a cognizable claim" where "Bristol County medical officials deny, delay, or intentionally interfere with medical treatment."

- [a] Based on the evidence presented by Enwonwu's medical records, its summary concluded merit because this court could " find any similarity between the acts performed by the defendants in this case and those in which courts have previously found Eighth Amendment violations." and summary judgment should be granted on evidentiary grounds.

[b] On the 27th of December, 2018, a fight broke out between county inmates and ICE detainees at Unit 2East and Mr. Enwonwu was thrown in solitary confinement for thirty days as a retaliation although he had no idea of any occuring fight at that time and was not involded in it in any shape and form. the Sheriff Response Team officer[s] Ashwood and Lieutenant *Barry Ferreira*, confisfaced and destroyed Enwonwu's legal flash drive containing all his legal material in a retaliatory manner.

- [c] Above mentioned evidence of such legal defense injur[ies] to Enwonwu in itself, is unconstitutional, concerning him [a pro se litigant's] "constitutional protected right of access to this court[s] do extend to enable Enwonwu to litigate with maxiumum ineffectiveness once in court".

(3)- Enwonwu at this time requested to consult wih his Attorney via a telephone call, the Legal Attorney call reqest was also deliberately refused by Office Ferreira and, neglected when detainee Enwonwu was taken to Booking holding [cell] section of the Bristol county jail used for intake only, at this location officer Ferreira told "Now You Have No Rights, You've Lost All Rights" and took Enwonwu back to the HSU before, he was sent to the segregation unit [EE] and placed in cell [G-8].

(4)- Officer[s] acted in the form of a retaliatory behavior, when they sure placed Enwonwu in very cold cell with broken windows for over seven hours, a below 0 winter weather, due to his reported conditions of living to the office of O.I.G, when Officer Jordan heard detainee hitting the cell wall because his blood kept getting colder and colder to the point, Enwonwu could not feel his hands and feet.

- [a] Officer Jordan accused Enwonwu of making suicidal statements to hurt himself, on 12/27/2018, and at that time detainee [Enwonwu] was subsequently brought to HSU and placed on Mental Health suicide (eyeball) watch in cell-#4,

- [b]On or about December 28th of 2018. ICE Agent *Larry Domes*, gave Enwonwu false assurances of him looking into the matter, as to why Enwonwu taken was out of his *__Housing Unit-2East__*, as he was the only [ICE/DHS] Agent that worked [onsite] at the Bristol County Sheriff Jail, with Lieutenant Duarte and Major Bulger as well.

(5)- On December 29, 2019, my status on eyeball and mental health watch was discontinued. I was left at medical pending further classification until my court date of January 3, 2019, when Enwonwu appeared before the Immigration court in Boston where he became unable "to engage in any substantial gainful activity by reason of his medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of now 10 months.

- [a] Upon Enwonwu's return from court on January 3, 2019, he was classified by the Administration to be placed in Segregation unit EC cell G-8.

- [b] On or about January 4, 2019, disciplinary officer Todd Barreira, gave me notification that I had been cleared of all allegations stemming from the alleged group assault on or about December 27, 2018. detainee Enwonwu was found to be *out of place,* right after been mentally broken down from suicidal watch, 10 days imposed disciplinary infraction was given, with additional sentence of 20 days for refusing to sign a waver of hearing, that was appraised and falsely fabricated to allege Enwonwu made threats to security or staff, while addmitted on suicidal watch.

- [c] The Bristol County Sheriff's Office Jail, did go against their own set policies, which also seriously violated the Massachusetts State set protocol that addresses Enwonwu's Federal Civil Rights, Bristol County Jail Official's discriminatory and,retaliatory acts towards Enwonwu continued as he refused to sign the issuance of a disciplinary hearing waiver, that would prohibit him from been heard on the alleged disciplinary ticket, resulted to a total of 30 days in segregation isolation for an alleged fabricated event which never occurred.

(6)- Officer Sousa's name was on the false fabricated disciplinary report written on December 27, 2018. that Enwonwu was clinically under a mental health suicidal hospitalization and made threats to security was simply false.

- [a] This alleged "threats made by Enwonwu" should and must show on the officer's documented note of all the things said or done by Enwonwu on such very hour under his that eye-ball-suicidal-watch simply because, none of Enwonwu's own retained information from the mental health department staffer[s] ever was made aware of such threats alleged of Enwonwu [making].

[b] In fact, it is evident that falsely fabricated threats alleged were solely used by this Bristol County Sheriff's administration as a retaliatory disciplinary power, that can now be seen for what it was;

- [c] If simply put, an institutional abuse of administrative privilege, the Bristol County Sheriff violated its own policies, retaliating against Detainee Enwonwu for complying with DHS set federal protocol, to report any mis-management or abuse of DHS oderly running of an institutional program[s].

(7)- On or about January 5, 2019, Enwonwu forwarded his grievance with a detailed letter to Colonel James Lancaster, stating solely his intent to appeal the 20 days sentence in segregation, my appeal was denied and my grievance was delegated to Major Bulger for further review, Enwonwu did personally send to the O.I.G.'s office in DC a detailed letter of his correspondence with Colonel James Lancaster;

- [a] which as policies and federal delegated protocol, compies to Enwonwu's current state as result to his serious mental suicidal hospitalization, Enwonwu had suffered mentioned deliberate isolated physical and mentally neglect, that, shows Bristol county's unresponsiveness in taking reasonable measures to remedy that serious mental devastation, they strongly directed taking away Enwonwu's *"a duty of care"*.

- [b] The Bristol County Sheriff Segregation Department frequently used institutional power (s) available to their administration in such a *realiatory manner against detainee* Enwonwu, because he made reports to Bristol county Jail failure to comply with federal protocol delegated to ICE held detainees at the 2-East unit.

- [c] From January 5, 2019. to January 26, 2019. Enwonwu was refused legal phone calls, and other means of ICE detainee protected privilege as part of said Realiatory reminder not to ever go against the Bristol county sheriff's office concerning my correspondence with the federal to investigate their office and on January 26, 2019, I was re-classified to unit 2-East.

(8)- On or about the first week of February 2019, Enwonwu received a false fabricated disciplinary write up from one officer Varela in unit 2east alleging that Enwonwu went inside the office of the medical provider, as this never happened, Enwonwu was called down to Disciplinary officer Todd Barreira's office where he stated to [me] Enwonwu during that ongoing disciplinary hearing, that sometimes " people wake up on the wrong side of the bed " Todd Barreira handed down a 5 day disciplinay lock in status [sentence] for the fabricated incident and, on the second week of March, Enwonwu was called to speak with the same medical provider, who could recall Enwonwu ever doing officer Varela's disciplinay report from months before alleged.

[a] As of July 20, 2019 I am still being detained with county inmates on unit 2 East, I have not recieved any of my legal work inside said flash drive,nor it's retrun since taken from my person on December 27, 2018.

(9)- On August 19, 2019. Enwonwu received a decision made by the Civil Rights and Civil Liberties office, in D.C Reference complaint No. 18-08-ICE-0333. of his filed concerns about lack of medical care, while held in Bristol County ICE Detention Jail, in May of 2019. "Located at 400 Faunce Corner Rd, North Dartmouth, MA 02747."

- [a] In that [complaint No: 18-08-ICE-0333] were solely based on erroneous fabricated information provided to mislead an on going investigation regarding specifically Enwonwu's medical care records being obtained from Bristol County Sheriff's office used (CPS Health Care Services) medical care provider, consistently showing Enwonwu have proved ("willful, wanton, or malicious conduct of medical negligence by Department Of Homeland Security Ice Contracted Conditions, and their direct unresponsiveness, caused Enwonwu to suffer serious emotional injury that is accompanied by physical symptomatology, when he was deprived of his minimal civilized measure [medical treatment] of life's necessities").

- [b] Although they continued to substantially limit him from his major life activity; in fact, this comprehensive statute, do prohibit certain circumstance of discrimination done to Enwonwu and, as the plainiff before this court should be "compensated for the negligently inicted injury."

- [c] Nevertheless, Enwonwu have made clear before this court of his ability to substantiate ICE's [DHS] use of false and erroneous medical care records to a different place Plymouth County Detention Facility and, time being march of 2018, solely to knowingly mislead ***CRCLCompliance@hq.dhs.gov*** [CRCL] that currently as such true indication to Enwonwu's made complaint was recieved on march of 2019, specifically reporting Bristol County [Sheriff's Office ICE Detention Center] medical care's health department failure to provide treatment as medically deeded; and their pure fabrication of medical records not of subject matter to current investigative made complaint of on or about march of 2019, total disregard to Enwonwu's human life.

- [d] On August 29, 2019 Enwonwu was finally called to HSU to see a Doctor, upon his arrival, he asked the Doctor what kind of medical provider do they use here in Bristol County [Sheriff's Office ICE Detention Center] medical care's health department failure and replied that "we use CPS Health Care provider".

## CONCLUSION

Based on the foregoing, rights of our nations accorded constitutional principles had continued to be consistely violated this Administration''s progressive discrimination based on race, ethnicity, or religion, by employees and officials of DHS. See complaint No.19-04-ICE-0144 reported on february 8, 2019 with the office for civil right and civil liberties, U.S. Department of Homeland Security Washington,DC 20528 and, in a comprehensive prohibited nature,

Accordingly, the closing of complaint No. 18-08-ICE-0333 have violated Enwonwu's Civil Rights and Civil Liberty entitled to him under "duty of care." Enwonwu have faxed his correct medical care records to CRCL to clear up provided fake information used to applied complaint closure under the circumstances below;

Ifeven when seen, by medical department marked as a follow up on their kept records regarding my untreated medical symptomatology issues concerning Enwonwu's physical observation medically made through a heightened degree of health skepticm consistent with Enwonwu's claim of conspiracy to violate Federal Civil Rights based off [of] the initial information, of that signed administrative relase requested medical records through Maureen Atkins the active medical director for "CPS- Health Care Services" in Bristol County ICE/DHS Detention.

On or about march of 2017 in-order to obtain Enwonwu's said clinical and laboratory diagnostic evidence till today, 09/26/2019, told the same statement for two years now, "we have [to] request it again" this is the only information give to me for two years later by BRISTOL JAIL medical department staffer[s] regarding my operation".

It's well supported by substantial evidence on the record, a decision based on such relevant evidence should be reasonable to the mind of this court to accept, as adequately supported that, sane conclusion backs it up. Thus, a decision supported by substantial evidence must stand in this civil law suit, even if the first Circuit might dedecide the question differently based on the same evidence.

*Respectfully submitted*

*ENWONWU,FRANCIS*
*PRO SE LITIGANT*
*26TH,SEPTEMBER 2019.*